J-A27029-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: T.W.E., JR., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.E., FATHER | : : : : : : | |
| | : | No. 1052 MDA 2022 |

Appeal from the Decree Entered June 27, 2022
In the Court of Common Pleas of York County Orphans' Court at No(s):
2022-0080A

BEFORE:   DUBOW, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:               **FILED: FEBRUARY 7, 2023**

T.E. ("Father") appeals from the decree terminating his parental rights as to his minor child, T.W.E., Jr. ("Child"). We affirm.

Child was born in September 2019.  A few weeks after Child's birth, York County Office of Children, Youth & Families ("the Agency") received a referral regarding concerns about Child's mother's ("Mother")[1] ability to care for Child due to mental health issues. Father was incarcerated at that time due to his fourth DUI arrest and driving on a suspended license. N.T., 6/27/22, at 27. Child was adjudicated dependent on October 1, 2019. Child was placed in the custody of the Agency and in the care of his maternal grandmother ("Maternal

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mother is not a party to this appeal.

Grandmother"). Child has remained in this pre-adoptive home since that time. *Id.* at 32-33, 43, 70.

Approximately two and one-half years after the adjudication of dependency, on April 22, 2022, the Agency filed a petition for involuntary termination of Father's parental rights. The court held a hearing on the petition on June 27, 2022.

The Agency presented the testimony of case worker Heather Sterner. Sterner testified that Father's goals were to maintain stable housing and income, comply with random drug testing, complete a parenting capacity evaluation, and attend visitation. *Id.* at 27. She stated that Father was incarcerated for approximately one year, from August 30, 2019 to August 29, 2020, and is currently on parole. *Id.* at 27-28. Sterner testified that since being released from prison, Father has maintained stable housing. *Id.* at 29. Father has also had a few different jobs, although none for long periods of time. *Id.*

Sterner stated that Father's drug tests have been clean, but the Agency had no documentation that Father had attended AA meetings as was recommended. *Id.* at 37. Father also completed a parenting capacity evaluation by Dr. Jonathan Gransee in February 2021. *Id.* at 35. Dr. Gransee's recommendations included continuing to attend therapy to develop skills that would improve Father's self-esteem, assertiveness, and decision-making abilities as they relate to caring for Child, and attending couple's counseling

with Mother. Sterner testified that Father has not developed such skills or attended couples counseling. *Id.* at 36.

Sterner testified that since the Agency's involvement with the family in October 2019, Father's visitation has always been supervised except for a period of approximately two months, from October 2021 to December 2021, when visits became unsupervised. *Id.* at 31-32. Visits reverted to supervised in December 2021 after an incident in which Mother drove with Child while intoxicated. *Id.* at 32. Father did not object to visits being returned to supervised.[2] Sterner stated that Father was consistent with visitation in 2021 but was "off and on with his consistency with visits" in 2022. *Id.* at 30-31. Father's last visit with Child was on April 27, 2022, which was two months prior to the termination hearing. *Id.* at 30. Father has largely not attended Child's medical or professional appointments. *Id.* at 38-40.

Sterner testified that Child has been in care for approximately 33 months, which is well outside of the time frame for permanent placement. *Id.* at 41. Sterner stated that the Agency was willing to give Father more time because he was making some progress on his goals. *Id.* at 41-42. Sterner

---

[2] Father contends he made an "implied" objection to visitation reverting to supervised at the hearing on December 28, 2021. *See* Father's Br. at 12-13. However, the record belies Father's contention and instead reveals he failed to make a clear and specific objection. *See* N.T., 12/28/21, at 5-6. "In order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue." *McManamon v. Washko*, 906 A.2d 1259, 1274 (Pa.Super. 2006) (citation omitted). Accordingly, Father has waived this argument.

also said there were issues due to the COVID-19 pandemic. *Id.* at 42. However, she testified that after 33 months, Father was still not able to provide for the care, protection, safety, and development of Child. *Id.* at 40.

Sterner testified that Child is in a safe, pre-adoptive home and has lived there since he was one month old. *Id.* at 32-33, 43. Sterner stated Child has a loving bond with Maternal Grandmother and looks to her to have his daily needs met. *Id.* at 33. Sterner explained that Child has a "small type of parental bond" with Father, but the bond was more like that of an uncle. *Id.* at 34-35. She opined that it was in the best interest of Child for Father's parental rights to be terminated and Child would suffer no detrimental impact. *Id.* at 42-43.

Father testified that he works at a restaurant and has turned over his pay stubs every other week to the Agency. *Id.* at 55-56. He stated that since visits went back to supervised in January 2022, there were times when his approved supervisors, who were his sister, niece, and a friend, would go to Maternal Grandmother's house and bring Child back to Father's house to visit. *Id.* at 56-59. He believed that the Agency was not aware of these visits and incorrectly stated that he last visited Child on April 27, 2022. *Id.* Father testified that although he was permitted to visit Child at Maternal Grandmother's house, he did not get along with her and was allergic to her cats. *Id.* at 56, 59. Father said that he recently visited Child a few times at Child's maternal grandfather's house, who does not live with Maternal Grandmother. *Id.* at 65.

Child's counsel indicated that although Child cannot articulate his desires due to his age, he is very happy and well-cared for in Maternal Grandmother's home. *Id.* at 69-70. Childs's Guardian *ad litem* concurred with Child's counsel and stated that it was in Child's best interest for Father's parental rights to be terminated. *Id.* at 70.

The trial court found that the Agency proved by clear and convincing evidence that Father's parental rights should be terminated under Section 2511(a)(2) and (8) and Section 2511(b) of the Adoption Act. Father filed a notice of appeal and raises the following issues:

1. Whether the trial court abused its discretion in finding that [the Agency] had proved by clear and convincing evidence that the parental rights of [Father] should be terminated pursuant to 23 Pa.C.S.A. [§] 2511(a)(2)[?]

2. Whether the trial court abused its discretion in finding that [the Agency] had proved by clear and convincing evidence that the parental rights of [Father] should be terminated pursuant to 23 Pa.C.S.A. [§] 2511(a)(8)[?]

3. Whether the trial court abused its discretion in finding that [the Agency] had proved by clear and convincing evidence that the parental rights of [Father] should be terminated pursuant to 23 Pa.C.S.A. [§] 2511(b)[?]

Father's Br. at 4.

We review an order involuntarily terminating parental rights for an abuse of discretion. *In re G.M.S.*, 193 A.3d 395, 399 (Pa.Super. 2018) (citation omitted). In termination cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (quoting *In re Adoption*

*of S.P.*, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." *In re Adoption of K.C.*, 199 A.3d 470, 473 (Pa.Super. 2018). We will reverse a termination order "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *In re Adoption of S.P.*, 47 A.3d at 826.

A party seeking to terminate parental rights has the burden of establishing grounds for termination by "clear and convincing evidence." *In re Adoption of K.C.*, 199 A.3d at 473 (citation omitted). Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Id.* (quoting *In re Z.S.W.*, 946 A.2d 726, 728-29 (Pa.Super. 2008)).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). Under this provision, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis

> concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.* (citations omitted). To affirm the termination of parental rights, this Court need only affirm the trial court's decision as to any one subsection of section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

Father first contends that the court erred in finding termination proper under Sections 2511(a)(2) and (8). As only one basis for termination under Section 2511(a) is necessary, we will focus our attention on the court's termination of Father's parental rights pursuant to Section 2511(a)(2), which states:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

Section 2511(a)(2) thus requires the moving party to prove three things by clear and convincing evidence: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence;

- 7 -

and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re K.Z.S.*, 946 A.2d 753, 758 (Pa.Super. 2008) (citation omitted). "The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; those grounds may also include acts of refusal as well as incapacity to perform parental duties." *Id.* (citation omitted). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Matter of Adoption of M.A.B.*, 166 A.3d 434, 443 (Pa.Super. 2017) (citation omitted).

Moreover, this Court has emphasized:

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re K.Z.S.*, 946 A.2d at 759 (citation omitted).

Father argues that the record does not support a finding that he is unwilling or incapable of remedying the conditions and causes of the incapacity, abuse, neglect or refusal to perform parental duties. Father's Br. at 10. He points out that the allegations that led to the adjudication of Child were concerns about Mother and that he was incarcerated at the time of the adjudication. *Id.* Father maintains that once he was released from prison, he

worked diligently to complete his reunification goals and the visits had progressed to unsupervised in October 2021. *Id.* at 11.

The trial court did not err in finding termination proper under Section 2511(a)(2). Although Father completed some of his single case plan objectives, and consistently visited Child for the most part, other evidence demonstrated that the reasons that Father has been unable to parent Child will not resolve. At the time of the filing of the petition and the termination hearing, Father's visits with Child continued to be supervised. Further, Father had not availed himself of the opportunity to visit Child at Maternal Grandmother's house. Father was also minimally compliant with the recommendations set forth in the parenting capacity evaluation and was not actively involved in Child's medical appointments. Child had been in care for almost three years, and it was not an abuse of discretion for the court to find that the Agency established, by clear and convincing evidence, that Father had a continued incapacity, abuse, neglect, or refusal to discharge parental duties, that the incapacity caused Child to be without parental care, control, or subsistence, and that the cause for the incapacity cannot or will not be remedied.

Father next claims the court erred in finding termination proper under Section 2511(b). The focus under Section 2511(b) is not on the parent, but on the child. *In re Adoption of R.J.S.*, 901 A.2d 502, 508 (Pa.Super. 2006). Under Section 2511(b), the trial court must consider "the developmental, physical and emotional needs and welfare of the child" to determine if

termination of parental rights is in the best interest of the child. **See** 23 Pa.C.S.A. § 2511(b). This inquiry involves assessment of "[i]ntangibles such as love, comfort, security, and stability[.]" **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa.Super. 2005). The court must also examine the parent-child bond, "with utmost attention to the effect on the child of permanently severing that bond." **Id.** However, the "mere existence of an emotional bond does not preclude the termination of parental rights." **In re N.A.M.**, 33 A.3d 95, 103 (Pa.Super. 2011). Rather, the trial court must consider whether severing the bond "would destroy an existing, necessary and beneficial relationship." **Id.** (citation omitted). The court must also examine any pre-adoptive home and any bond between the child and the foster parents. **In re T.S.M.**, 71 A.3d at 268.

Here, the trial court determined that the Agency had established by clear and convincing evidence that termination was proper under Section 2511(b). The record supports the court's finding. Sterner testified that Child has a loving bond with Maternal Grandmother, with whom he has lived for the majority of his young life, and looks to her to have his daily needs met. Although Child had a small bond with Father, he views Father as more like an uncle than a father. We perceive no reasonable basis on which to challenge the court's conclusion that termination of Father's parental rights would be in Child's best interest.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/07/2023